**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| RONALD H. PRICHEP,<br>   Individually, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RONALD H. PRICHEP, | ) | |
|    Derivatively as a Member of Ugly Bishop Tattoo | ) | |
|    Shop, LLC, and of Ugly Bishop Tattoo Parlor, LLC, | ) | |
| | ) | |
|       Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 3:19cv__315____ |
| | ) | |
| BISHOP I. WALKER, | ) | |
| | ) | |
|     **Serve: Bishop I. Walker** | ) | |
|          **309 Chatham Heights Rd.** | ) | |
|          **Fredericksburg, VA 22405**, | ) | |
| | ) | <u>JURY TRIAL DEMANDED</u> |
| and | ) | |
| | ) | |
| UGLY BISHOP TATTOO SHOP, LLC, | ) | |
| | ) | |
|     **Serve: Bishop I. Walker,** | ) | |
|          **Registered Agent** | ) | |
|          **309 Chatham Heights Rd.** | ) | |
|          **Fredericksburg, VA 22405**, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UGLY BISHOP TATTOO PARLOR, LLC, | ) | |
| | ) | |
|     **Serve: Bishop I. Walker,** | ) | |
|          **Registered Agent** | ) | |
|          **309 Chatham Heights Rd.** | ) | |
|          **Fredericksburg, VA 22405**, | ) | |
| | ) | |
| and | ) | |
| | ) | |

UB TATTOO PARLOR, LLC,                          )
                                                )
    **Serve: Bishop I. Walker,**         )
           **Registered Agent**              )
           **103 Seven Pines Dr.**           )
           **Locust Grove, VA 22508**,       )
                                                )
and                                             )
                                                )
KELSEY BRENDLE WALKER,                          )
  a/k/a Kelsey Brendle,                       )
                                                )
    **Serve: Kelsey Brendle Walker,**   )
           **103 Seven Pines Drive**         )
           **Locust Grove, VA 22508**,       )
                                                )
    Defendants.                         )
_____)

## COMPLAINT

The Plaintiffs, Ronald H. Prichep, individually, and Ronald H. Prichep, derivatively as a member of Ugly Bishop Tattoo Shop, LLC ("UBTS"), and derivatively as a member of Ugly Bishop Tattoo Parlor, LLC ("UBTP," collectively with UBTS, the "Shops," and each individually a "Shop"), states the following in Complaint against the Defendants, Bishop I. Walker ("Walker"), Kelsey Brendle Walker ("Brendle-Walker"), UB Tattoo Parlor, LLC (the "Walker LLC"), UBTS, and UBTP (collectively, the "Defendants").

This lawsuit presents derivative claims pursuant to Code of Virginia sections 13.1-1042 and 13.1-1044, brought by the Shops' member, Mr. Prichep, against Walker and/or Brendle-Walker on the Shops' behalf, as well as individual claims brought by Mr. Prichep against Walker, the Walker LLC, and/or Brendle-Walker.  For the reasons set forth herein, Mr. Prichep respectfully asks the Court to enter judgment in his favor and against the Defendants, and to award him damages in the amounts alleged herein.

## THE PARTIES

1. Mr. Prichep is a natural person domiciled in the State of Rhode Island. Mr. Prichep is a fifty percent (50%) owner and member of UBTS, and he is also a fifty percent (50%) owner and member of UBTP.

2. Walker is a natural person domiciled in the Commonwealth of Virginia. Walker is a fifty percent (50%) owner and member of UBTS, and he is also a fifty percent (50%) owner and member of UBTP. Upon information and belief, Walker is also a member of the Walker LLC.

3. As provided under the Shops' current, respective Operating Agreements (appended hereto as Exhibits 1 and 2), Walker is also manager of UBTS and of UBTP, designated as "Active Partner" or "Managing Partner." (See Exhs. 1 & 2 hereto.)

4. UBTS is a limited liability company organized and existing under the laws of the Commonwealth of Virginia, having at all times relevant hereto its principal place of business at 2119 Lafayette Boulevard, in the City of Fredericksburg, Virginia.

5. UBTP is a limited liability company organized and existing under the laws of the Commonwealth of Virginia, having at all times relevant hereto its principal place of business at 15510 Montanus Drive, Suite E, in the Town of Culpeper, Virginia. Upon information and belief, at all times relevant UBTP's operations were directed from UBTS' business premises located at 2119 Lafayette Boulevard, in the City of Fredericksburg, Virginia.

6. The Walker LLC is a limited liability company organized and existing under the laws of the Commonwealth of Virginia. Upon information and belief, at all times relevant hereto the Walker LLC has had its principal place of business at either 103 Seven Pines Drive, in Locust Grove, Virginia, or 309 Chatham Heights Road, Fredericksburg, Virginia. Upon information and

belief, at all times relevant the Walker LLC's operations are presently directed from its business premises located at 309 Chatham Heights Road, Fredericksburg, Virginia.

7.  Brendle-Walker is a natural person domiciled in the Commonwealth of Virginia.  Brendle-Walker is neither a member nor a manager of UBTS or UBTP, nor has she at any time been an employee of UBTS or UBTP.  Mr. Prichep presently lacks sufficient information to determine whether Brendle-Walker is a member of the Walker LLC.

<u>JURISDICTION</u>

8.  The Court has original jurisdiction in this action under Title 28, section 1331 of the United States Code, as this lawsuit is a civil action arising under one or more laws of the United States of America, specifically Title 15, section 1125(a) of the United States Code.

9.  The Court has supplemental jurisdiction over the claims arising under Virginia law alleged herein, as provided under Title 28, section 1367 of the United States Code.

10. Walker is subject to the Court's personal jurisdiction, as he has conducted business and committed at least part of the wrongful acts alleged herein within the City of Fredericksburg, Virginia, located within this judicial District and Division.

11. UBTS is subject to the Court's personal jurisdiction, as the claims alleged herein arise from its operation of a business within the City of Fredericksburg, Virginia, located within this judicial District and Division.

12. UBTP is subject to the Court's personal jurisdiction, as the claims alleged herein arise from the direction of its business operations from within from the City of Fredericksburg, Virginia, located within this judicial District and Division.

13. The Walker LLC is subject to the Court's personal jurisdiction, as it has committed at least part of the wrongful acts alleged herein within the City of Fredericksburg, Virginia, located within this judicial District and Division.

14. Brendle-Walker is subject to the Court's personal jurisdiction, as she has conspired with her cohort, Walker, to commit certain tortious acts against the Plaintiffs and/or the Shops within the City of Fredericksburg, Virginia, located within this judicial District and Division.

<u>VENUE</u>

15. The venue of this action is properly predicated upon Title 28, section 1391(b) of the United States Code and Local Civil Rule 3(B) and 3(C) of the Rules of the U.S. District Court for the Eastern District of Virginia, in that jurisdiction is founded on a federal question and this action is brought within the judicial District and Division in which a substantial part of the events or omissions giving rise to the claim(s) alleged herein occurred:  specifically, at 2119 Lafayette Boulevard, in the City of Fredericksburg, Virginia, and at 309 Chatham Heights Road, in the City of Fredericksburg, Virginia.

<u>FACTS</u>

16. On March 8, 2011, Mr. Prichep filed a fictitious name form for the name "Ugly Bishops Tattoo" as a sole proprietor.

17. On or about April 1, 2011, Walker and Mr. Prichep registered UBTS with Virginia's State Corporation Commission (the "SCC") as a limited liability company.

18. On or about September 24, 2015, Walker and Mr. Prichep registered UBTP with the SCC as a limited liability company.

19. UBTS and UBTP are each in the business of performing tattoo services for retail customers.

20. At all times relevant, UBTS has operated a retail tattoo shop located at 2119 Lafayette Boulevard, in the City of Fredericksburg, Virginia, under the name "Ugly Bishop's Tattoo Shop."

21. At all times relevant, UBTP has operated a retail tattoo shop located at 15510 Montanus Drive, Suite E, in the Town of Culpeper, Virginia, under the name "Ugly Bishop's Tattoo Parlor."

22. At all times relevant, UBTS and UBTP have used a distinctive, whimsical logo depicting an angry rooster wearing boxing gloves in a humanlike fighting stance. An example of this logo is depicted below (hereinafter, the "Fighting Rooster Logo"):



23. At all times relevant, UBTS and UBTP have maintained a website with the url www.uglybishoptattoo.com (the "Ugly Bishop Website"), and a Facebook page titled "Ugly Bishop's Tattoo Shop" (the "Ugly Bishop Facebook Page").

24. Under UBTS' Operating Agreement, as amended on May 2, 2017, Mr. Prichep owns 50% of UBTS, and is designated as a "Passive Partner." (See Exh. 1, at 1.)

25. Although designated as a "Passive Partner," Mr. Prichep agreed to "consult[ ] on finances, accounting, budgeting, taxes and legal matters" for UBTS. (See id.)

26. Mr. Prichep was also responsible for preparing UBTS' income tax returns. (See id. at 2.)

27. Mr. Prichep also is the named holder of UBTS' business license issued by the City of Fredericksburg.  (See Exh. 3.)

28. Additionally, Mr. Prichep is the named licensee for UBTS' tattoo-parlor license, issued by the Commonwealth of Virginia.  (See Exh. 4.)

29. As UBTS' "Passive Partner," Mr. Prichep was to receive $1,000 per week from UBTS. (See Exh. 1 at 1.)

30. As UBTS' "Active Partner," or manager, Walker was responsible for "running day to day operations of the business."  (See id.)  Walker was to receive $1,000 per week from UBTS for his work.  (See id.)

31. Under UBTP's Operating Agreement, as amended on May 2, 2017, Mr. Prichep owns 50% of UBTP, and is designated as a "Passive Partner."  (See Exh. 2, at 1.)

32. Although designated as a "Passive Partner," Mr. Prichep agreed to "consult[ ] on finances, accounting, budgeting, taxes and legal matters" for UBTP.  (See id.)

33. Mr. Prichep was also responsible for preparing UBTP's income tax returns.  (See id. at 2.)

34. Mr. Prichep also is the named holder of UBTP's business license issued by the County of Culpeper.  (See Exh. 5.)

35. Mr. Prichep is the named licensee for UBTP's tattoo-parlor license, issued by the Commonwealth of Virginia.  (See Exh. 6.)

36. As UBTP's "Passive Partner," Mr. Prichep was to receive $1,000 per week from UBTP. (See Exh. 2 at 1.)

37. As UBTP's "Managing Partner," or manager, Walker was responsible for "running day to day operations of the business."  (See id.)  Walker was to receive $1,000 per week from UBTP for his work.  (See id.)

38. While managing the Shops, Walker made frequent trips to California for personal leisure or recreation, thereby depriving the Shops of much-needed revenue and oversight during his absences.

39. On each occasion when Walker traveled to California, he left four apprentice tattoo artists to operate the Shops.

40. The Virginia Department of Professional and Occupational Regulation ("DPOR") oversees the operation of tattoo parlors and sets certain standards for such businesses.

41. DPOR regulations mandate "that a Virginia licensed tattooer shall be present in the tattoo parlor at all times when services are being performed by an apprentice." 18 V.A.C. § 41-50-50.

42. On November 9, 2017, Mr. Prichep reminded Walker by email of the requirement that he be present to supervise any apprentice tattoo artists.

43. Despite this warning, Walker travelled to California for ten days for personal leisure or recreation at the end of November 2017. During this vacation, Walker again left apprentice tattoo artists to operate the Shops unsupervised.

44. While Walker was away on this vacation, a DPOR investigator visited the Shops and discovered the apprentice tattoo artists operating unsupervised.

45. As a result of this violation, Mr. Prichep had to travel to Virginia to meet with the DPOR.

46. Although the DPOR did not sanction the Shops, the Shops were unable to use apprentices until all paperwork was complete, costing the Shops revenue for several months.

47. Despite these events, Walker continued to make regular trips to California for personal leisure or recreation.

48. Among Walker's other responsibilities as manager for the Shops was depositing funds generated from each Shop's revenue into the Shops' respective bank accounts each month, from which each of the Shops was to pay its debts and obligations.

49. Among the Shops' debts and obligations to be paid from the Shops' respective bank accounts was Mr. Prichep's weekly payments as "Passive Partner" in each Shop, as well as Walker's weekly payment from each Shop.

50. Beginning in or about late February 2018, Walker began failing in his responsibility to deposit funds into the Shops' respective bank accounts.

51. As the member responsible for the Shops' bookkeeping and accounting, Mr. Prichep promptly began to question Walker regarding Walker's failure to deposit funds into the Shops' accounts, and to urge Walker to make deposits so that the Shops would be able to pay their debts and obligations.

52. Despite Mr. Prichep's repeated pleas and urging, Walker continued to make insufficient deposits into the Shops' accounts, or to make no deposits, thereby causing each of the Shops to default on certain debts, and causing Mr. Prichep to pay certain of the Shops' debts out of his personal funds.

53. Walker's response to Mr. Prichep's admonitions regarding deposits was to complain of cash-flow issues occasioned by reported staff turnover, business slow-downs, and other business difficulties, a claim that was belied by Walker's frequent recreational trips to California.

54. By the summer of 2018, it became apparent that Mr. Prichep's business arrangement with Walker had broken down, and that Walker did not intend to fulfill his obligations to the Shops and to Mr. Prichep.

55. At some point in the summer of 2018, Walker retained Molly Flurry, Esquire, as his legal counsel.

56. On August 2, 2018, Mr. Prichep received an email from Ms. Flurry stating that Walker planned to dissolve the Shops.

57. Mr. Prichep responded that he would consult counsel regarding this.

58. Two days later, on August 4, 2018, Walker registered a new limited liability company with the Virginia State Corporation Commission ("SCC") under the name "UB Tattoo Parlor LLC." Walker did not inform Mr. Prichep that he had set up this new company, and Mr. Prichep did not learn of it until April 2019.

59. At the time Walker registered the Walker LLC with the SCC, Walker remained a member of the Shops, and he remained the Shops' manager.

60. On August 22, 2018, Mr. Prichep retained legal counsel, Chadwick Rogers, Esquire, to negotiate with Walker to reach mutually agreeable terms for Walker to purchase Mr. Prichep's interest in the Shops, and/or to otherwise resolve the dispute over Walker's failure to meet his obligations as manager for each of the Shops.

61. Negotiations then proceeded apace between Mr. Rogers and Ms. Flurry from August 2018 into early 2019, but without success.

62. The breakdown of negotiations resulted from Walker refusing to negotiate in good faith to resolve the parties' dispute.

63. Meanwhile, Walker persisted in failing to pay funds into the Shops' bank accounts, thereby causing each of the Shops to default on various debts and forcing Mr. Prichep to assume personal liability for certain of the Shops' debts.

64. Despite Mr. Prichep's continued warnings about the insufficiency of funds in the Shops' bank accounts and/or to make purchases using the Shops' credit cards, Walker and/or his co-conspirator, Brendle-Walker, continued to make withdrawals from the Shops' bank accounts and to make purchases with the Shops' credit cards, purportedly for legitimate business expenses.

65. At no time was Brendle-Walker an employee of UBTS or UBTP, nor was Brendle-Walker a member or designated manager of either UBTS or UBTP.

66. In or about March 2019, Walker ceased operations at UBTS' shop in Fredericksburg, as well as at UBTP's shop in Culpeper, all without obtaining Mr. Prichep's approval or consent, and without calling a meeting of either Shop's members as required under the Shops' respective Operating Agreements.

67. Walker then opened a new shop located at 309 Chatham Heights Road, Fredericksburg, Virginia, operating and/or advertising under the name "Ugly Bishop's Tattoo Shop" (the "Walker Shop").

68. Upon information and belief, the Walker Shop is owned and/or operated by the Walker LLC, and is staffed and run by Walker.

69. Walker did not obtain Mr. Prichep's approval or consent (as co-member of the Shops) to abandon UBTS and UBTP, to start a new company, or to open a new, competing business of his own.

70. Walker also did not obtain UBTS' approval or consent to conduct business and/or advertise under the name "Ugly Bishop's Tattoo Shop," which is a trademark belonging to UPTS and under which Mr. Prichep holds UPTS' business license.

71. Furthermore, Walker did not obtain UBTS' approval or consent to conduct business and/or advertise under the Fighting Rooster Logo.

72. Throughout the relevant period, the name "Ugly Bishop's Tattoo Shop" and its accompanying Fighting Rooster Logo have accumulated considerable goodwill, including through UBTS' winning of the Best of Fredericksburg Award in the category of Tattoo Shop for several years in a row.

73. In or about March or April 2019, Walker changed the name of the Walker Shop to "UB Ink."

74. In or about March or April 2019, the title of the Ugly Bishop Website was changed to "UB Ink." (See Exh. 7 at 1.) This change was accompanied by the addition of a message at the top of the website's home page falsely informing customers that UBTS was now operating as UB Ink and had relocated to the Walker Shop. (See id.) This post reads as follows:

UGLY BISHOPS NOW PRESENTS UB INK. WE ARE NO LONGER OPERATING AS UGLY BISHOPS TATTOO SHOP. SAME UGLY BISHOP NEW PLACE. COME VISIT US AT OUR NEW LOCATION ONLY 4 MILES AWAY @ 309 CHATHAM HEIGHTS RD.  FREDERICKSBURG, VA 22405

75. The website also has an image at the top of its homepage combining Plaintiffs' Fighting Rooster Logo with the false and/or misleading message "Ugly Bishop presents UB INK." (See id.) This image is depicted below (hereinafter, the "Infringing Image"):



76. Upon information and belief, these changes to the Ugly Bishop Website were made by Walker or at Walker's direction.

77. Despite these changes, the website is still found at the url "www.uglybishoptattoo.com". The website also contains a color image of the Fighting Rooster Logo at the foot of its home page. (See id. at 2.)

78. On March 30, 2019, the Ugly Bishop Facebook Page was edited to reflect the address and phone number of the Walker Shop, but still using the "Ugly Bishop's Tattoo Shop" mark. (See

Exh. 8.) This change was accompanied by a posting of the Infringing Image as the Ugly Bishop Facebook Page's new cover photo.  (See id.)

79. Upon information and belief, these changes to the Ugly Bishop Facebook Page were made by Walker or at Walker's direction.

80. At no point did Mr. Prichep, or the Shops, authorize these changes to the Ugly Bishop Website or the Ugly Bishop Facebook Page.

81. At no point did Mr. Prichep, or UBTS, authorize the use of UBTS' "Ugly Bishop Tattoo Shop" mark or the Fighting Rooster Logo in connection with the Walker Shop and/or the Walker LLC.

82. At no point did Mr. Prichep, or the Shops, authorize Walker, Brendle-Walker, UB Ink, or any other person to represent that the Shops were in any way affiliated, connected, or associated with the Walker Shop and/or the Walker LLC.

83. Between January 30, 2018, and March 5, 2019, Mr. Prichep received only part of the weekly payment from UBTS to which he was entitled under the Operating Agreement because, as reported by Walker, UBTS lacked sufficient funds.  Specifically, the weeks when Mr. Prichep received less than the full payment during this time period were as follows:

  a.  January 30, 2018: $300.

  b.  March 6, 2018: $300.

  c.  October 23, 2018: $500.

  d.  October 30, 2018: $500.

  e.  November 6, 2018: $900.

  f.  November 20, 2018: $500.

  g.  November 27, 2018: $500.

    h.  December 11, 2018: $800.

    i.  December 18, 2018: $400.

    j.  December 26, 2018: $500.

    k.  January 30, 2019: $500.

    l.  February 5, 2019: $500.

    m.  March 5, 2019: $600.

84. Since March 19, 2019, Mr. Prichep has not received the weekly payment from UBTS to which he was entitled under the Operating Agreement, for a total loss of $5,000 to date.

85. From May 2, 2017 to the present, Mr. Prichep has never received the weekly payment from UBTP to which he was entitled under the Operating Agreement, for a total loss of $104,000 to date.

86. Based on Walker's numerous wrongful acts and omissions detailed herein, Walker has inflicted damages on Mr. Prichep, on UBTS, and on UBTP, in amounts that continue to accrue but which include the following, without limitation:

    a.  Walker has infringed upon UBTS' trademark, "Ugly Bishop's Tattoo Shop," and he has infringed, and continues to infringe, on UBTS' Fighting Rooster Logo, thereby causing UBTS to lose revenues in an amount totaling at least $81,000 to date, and increasing daily;

    b.  Mr. Prichep has suffered the loss of $115,800.00, to date, in "passive income" owed to Mr. Prichep under the Shops' respective Operating Agreements, and he will continue to suffer the loss of $2,000 per week;

    c.  Mr. Prichep has incurred personal liability in the amount of at least $9,254.90, as guarantor for UBTS' credit-card account;

    d.  Upon information and belief, each of the Shops has defaulted on its lease agreement for its business premises, or had its lease cancelled by Walker, without notice to Mr. Prichep and without his approval or consent;

    e.  Each of the Shops is in default of certain other debts, including, without limitation, utility service, cable service, and/or licensing fees or taxes; and

    f.  Each of the Shops is owed money by Walker who, upon information and belief, performed a substantial amount of "off the books" work during his operation of each of the Shops, thereby depriving UBTS and UBTP of revenue owed to them under the Operating Agreements

    g.  Each of the Shops is owed money by UB Ink, based upon its ongoing infringement of the Fighting Rooster Logo, its past infringement of the "Ugly Bishop's Tattoo Shop" mark, and/or its conspiracy with Walker and/or Brendle-Walker to convert the Shops' respective funds, equipment, and other resources to its own use.

87. Mr. Prichep has not made a demand to Walker pursuant to Code of Virginia section 13.1-1042, as Walker would necessarily be a defendant in such a lawsuit and a demand by Mr. Prichep, therefore, would be futile: Walker would certainly not agree to sue himself, nor would he likely agree to sue Brendle-Walker to whom, upon information and belief, Walker is married, or the Walker LLC, of which he is believed to be a member and manager.

88. Mr. Prichep is therefore excused from making such a demand, as provided under Code of Virginia section 13.1-1044.

89. Mr. Prichep has standing to assert derivative claims on the Shops' behalf pursuant to Code of Virginia section 13.1-1043, as Mr. Prichep has been a member of each of the Shops since its inception, and he remains a member of each Shop.

90. For each of these reasons, as alleged and detailed further herein, Mr. Prichep respectfully asks that the Court enter judgment in his favor, in his own right and as a member of the Shops on their behalf.

FIRST CAUSE OF ACTION:  VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a) –
TRADEMARK INFRINGEMENT
(Derivative Claim against Walker, Brendle-Walker, and the Walker LLC)

91. Paragraphs 1-90 of this Complaint are hereby re-alleged and restated, as if set forth verbatim in this Paragraph.

92. On or about August 4, 2018, Walker registered the Walker LLC with the SCC.

93. Beginning in or before April 2019, Walker and/or the Walker LLC set up a competing tattoo business, the Walker Shop.

94. Upon information and belief, Brendle-Walker has assisted Walker in setting up and running the Walker Shop and/or the Walker LLC.

95. The Walker Shop trades in interstate commerce.

96. Walker and/or the Walker LLC were originally operating and advertising the Walker Shop under the name "Ugly Bishop's Tattoo Shop," and they are now operating it under the name "UB Ink."

97. The name "UB Ink" is confusingly similar to "Ugly Bishop's Tattoo Shop," especially in light of Walker's and/or Brendle-Walker's statements falsely advertising UB Ink as a continuation of UBTS.

98. Walker and/or the Walker LLC are operating and/or advertising the Walker Shop using the Fighting Rooster Logo.

99. "Ugly Bishop's Tattoo Shop" is a strong mark that is not registered with the U.S. Patent & Trademark Office, but which UBTS has used – and under which UBTS has operated – since 2011.

- 17 -

100.     The mark "Ugly Bishop's Tattoo Shop" also appears on UBTS' business license, which was issued by the City of Fredericksburg to Mr. Prichep.  (See Exh. 3.)

101.     UBTS is the mark's prior user, by a factor of some eight years.

102.     As the prior user of the "Ugly Bishop's Tattoo Shop" mark, UBTS owns the mark.

103.     The mark "Ugly Bishop's Tattoo Shop" is an arbitrary mark, in that it employs words in common usage but which do not describe the service they promote in any real sense.

104.     Alternatively, the mark "Ugly Bishop's Tattoo Shop" is a suggestive mark, in that it connotes, but does not describe, some quality or characteristic of the service it promotes, even if a consumer would be unlikely to identify the service without actual knowledge of what it is.

105.     In the further alternative, the mark "Ugly Bishop's Tattoo Shop" is a descriptive mark, which has acquired a secondary meaning, in that it functions to promote UBTS' services as its name implies, and its primary significance is to identify UBTS as the source of the tattoo services the mark promotes.

106.     Whether it qualifies as an arbitrary mark, a suggestive mark, or a descriptive mark of secondary meaning, "Ugly Bishop's Tattoo Shop" is a valid trademark owned by UBTS, and it is protected under the Lanham Act, 15 U.S.C. section 1125(a).

107.     The Fighting Rooster Logo is a strong mark that is not registered with the U.S. Patent & Trademark Office, but which UBTS has used – and under which UBTS has operated and advertised – since 2011.

108.     UBTS is the "Ugly Bishop's Tattoo Shop" mark's prior user, by a factor of some eight years.

109.     The Shops are the Fighting Rooster Logo's prior users, by a factor of some eight years.

110.     As the prior user of the "Ugly Bishop's Tattoo Shop" mark and/or the Fighting Rooster Logo, the Shops own those marks.

111.     The mark "Ugly Bishop's Tattoo Shop" is an arbitrary mark, in that it employs words in common usage but which do not describe the service they promote in any real sense.

112.     Alternatively, the mark "Ugly Bishop's Tattoo Shop" is a suggestive mark, in that it connotes, but does not describe, some quality or characteristic of the service it promotes, even if a consumer would be unlikely to identify the service without actual knowledge of what it is.

113.     In the further alternative, the mark "Ugly Bishop's Tattoo Shop" is a descriptive mark, which has acquired a secondary meaning, in that it functions to promote UBTS' services as its name implies, and its primary significance is to identify UBTS as the source of the tattoo services the mark promotes.

114.     Whether it qualifies as an arbitrary mark, a suggestive mark, or a descriptive mark of secondary meaning, "Ugly Bishop's Tattoo Shop" is a valid trademark owned by UBTS, and it is protected under the Lanham Act, 15 U.S.C. section 1125(a).

115.     The Fighting Rooster Logo is an arbitrary mark, in that it employs words and images in common usage but which do not describe the service they promote in any real sense.

116.     Alternatively, the Fighting Rooster Logo is a suggestive mark, in that it connotes, but does not describe, some quality or characteristic of the service it promotes, even if a consumer would be unlikely to identify the service without actual knowledge of what it is.

117.     In the further alternative, the Fighting Rooster Logo is a descriptive mark, which has acquired a secondary meaning, in that it functions to promote the Shops' services as its name implies, and its primary significance is to identify one or both of the Shops as the source of the tattoo services the mark promotes.

118.    Whether it qualifies as an arbitrary mark, a suggestive mark, or a descriptive mark of secondary meaning, the Fighting Rooster Logo is a valid trademark owned by the Shops, and it is protected under the Lanham Act, 15 U.S.C. section 1125(a).

119.    Walker, the Walker LLC, and/or Brendle-Walker have misappropriated and wrongfully used the "Ugly Bishop's Tattoo Shop" mark and/or the Fighting Rooster Logo since at least March 30, 2019, using those marks to advertise and promote the Walker Shop.

120.    Walker's, the Walker LLC's, and/or Brendle-Walker's wrongful and infringing use of the "Ugly Bishop's Tattoo Shop" mark and Fighting Rooster Logo are likely to cause – and likely are causing – consumers to confuse, mistake, and/or be deceived into believing that the Walker Shop is owned and/or operated by one or both of the Shops.

121.    Indeed, Walker, the Walker LLC, and/or Brendle-Walker intended such confusion, mistake, and/or deception as shown by Walker's abandoning the Shops' business locations, using the Shops' funds to purchase materials and equipment to operate the Walker Shop, and/or one or more of the these defendants removing one or both Shops' business equipment and other assets from the Shops' respective business premises to the Walker Shop.

122.    Furthermore, Walker, the Walker LLC, and/or Brendle-Walker are using a website, a Facebook page, and an Instagram page that also improperly use UBTS' mark, "Ugly Bishop's Tattoo Shop," and the Shops' Fighting Rooster Logo, to advertise the Walker Shop and mislead consumers into believing that one or both of the Shops merely relocated its business to the Walker Shop's premises.

123.    Walker's, the Walker LLC's, and/or Brendle-Walker's misappropriation and misuse of the "Ugly Bishop's Tattoo Shop" mark and the Fighting Rooster Logo violate the

Lanham Act, 15 U.S.C. section 1125(a), by infringing upon UBTS' mark. *See* 15 U.S.C. § 1125(a).

124.     As a consequence of Walker's, the Walker LLC's, and/or Brendle-Walker's ongoing infringement of the "Ugly Bishop's Tattoo Shop" trademark and the Fighting Rooster Logo in violation of the Lanham Act, 15 U.S.C. section 1125(a), the Shops have suffered, and continue to suffer, serious and ongoing damages as set forth in the *ad damnum* clause herein, and Mr. Prichep should be compensated, individually and/or derivatively, on the Shops' behalf, as provided under 15 U.S.C. section 1117(a).

125.     Mr. Prichep therefore prays that judgment be entered in his favor against Walker, the Walker LLC, and Brendle-Walker, jointly and severally, in the amounts set forth in the *ad damnum* clause at the end of this Complaint.

SECOND CAUSE OF ACTION:  VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a)
– UNFAIR COMPETITION
(Derivative Claim against Walker, Brendle-Walker and the Walker LLC)

126.     Paragraphs 1-126 of this Complaint are hereby re-alleged and restated, as if set forth verbatim in this Paragraph.

127.     As detailed above, "Ugly Bishop's Tattoo Shop" is a valid mark that is not registered with the U.S. Patent & Trademark Office, but which UBTS has used – and under which UBTS has operated – since 2011.

128.     Similarly, as detailed above, the Fighting Rooster Logo is a valid mark that is not registered with the U.S. Patent & Trademark Office, but which the Shops have used – and under which they have operated – since 2011.

129.     As detailed above, the Shops own these marks as their prior users, by a factor of some eight years.

130.     As detailed above, Walker, the Walker LLC, and/or Brendle-Walker have misappropriated and wrongfully used these marks since at least March 30, 2019, using those marks to advertise and promote the Walker Shop at the expense of one or both of the Shops.

131.     Upon information and belief, this wrongful and infringing use of the marks is intended to cause, is likely to cause, and has caused consumers to be confused, mistaken, and/or deceived into believing that the Walker Shop is owned and/or operated by one or both of the Shops, and/or that one or both of the Shops are no longer operating at their original locations or under their original names.

132.     Walker's, the Walker LLC's, and/or Brendle-Walker's misappropriation and misuse of the "Ugly Bishop's Tattoo Shop" mark and the Fighting Rooster Logo violate the Lanham Act, 15 U.S.C. section 1125(a), by unfairly competing with UBTS.  *See* 15 U.S.C. § 1125(a).

133.     As a consequence of Walker's and/or Brendle-Walker's ongoing unfair competition in violation of the Lanham Act, 15 U.S.C. section 1125(a), the Shops have suffered, and continue to suffer, serious and ongoing damages as set forth in the *ad damnum* clause herein, and Mr. Prichep should be compensated, individually and/or derivatively on the Shops' behalf, as provided under 15 U.S.C. section 1117(a).

134.     Mr. Prichep therefore prays that judgment be entered in his favor against Walker, the Walker LLC, and Brendle-Walker, jointly and severally, in the amounts set forth in the *ad damnum* clause at the end of this Complaint.

THIRD CAUSE OF ACTION:  VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a) –
FALSE ASSOCIATION AND FALSE ENDORSEMENT
(Derivative Claim against Walker, and against Brendle-Walker and the Walker LLC)

135.    Paragraphs 1-135 of this Complaint are hereby re-alleged and restated, as if set forth verbatim in this Paragraph.

136.    As detailed above, Walker, the Walker LLC, and/or Brendle-Walker established the Walker Shop under the name "Ugly Bishop's Tattoo Shop," and later changed this to the confusingly similar name "UB Ink."

137.    As detailed above, when Walker, the Walker LLC, and/or Brendle-Walker renamed the Walker Shop to UB Ink, they made statements on the Ugly Bishop Website and Ugly Bishop Facebook Page falsely representing that UBTS had been renamed UB Ink and had relocated its shop to the location of the Walker Shop.  These statements include:

a.    The statement on the Ugly Bishop Website: "Ugly Bishops now presents UB Ink. We are no longer operating as Ugly Bishops Tattoo Shop.  Same Ugly Bishop new place.  Come visit us at our new location only 4 miles away [at] 309 Chatham Heights Rd.[,]  Fredericksburg, VA 22405"

b.    The statement on the Infringing Image, posted on both the Ugly Bishop Website and the Ugly Bishop Facebook Page: "Ugly Bishop presents UB Ink"

138.    As detailed above, Walker, the Walker LLC, and/or Brendle-Walker have used and continue to use the Fighting Rooster Logo to promote the Walker Shop at the expense of the Shops.

139.    Upon information and belief, these actions are intended to confuse consumers regarding the relationship between the Walker Shop and the Shops, and to deceive and cause consumers into mistakenly believing that the Walker Shop is connected with and/or endorsed by one or both Shops.

140.     Upon information and belief, the Walker Shop's use of the name "Ugly Bishop's Tattoo Shop" has caused, and continues to cause, consumer confusion and mistake, and has deceived, and continues to deceive, consumers into believing that the Walker Shop is affiliated with and/or endorsed by UBTS.

141.     At no point has UBTS ever endorsed, associated with, or been connected with the Walker Shop in any way apart from Walker's abandonment of UBTS to launch the Walker Shop and/or the Walker LLC as a competing venture.

142.     At no point has UBTS authorized Walker, the Walker LLC, Brendle-Walker, or the Walker Shop to represent that the Walker Shop is endorsed by, affiliated with, or in any way connected with UBTS.

143.     Walker's, the Walker LLC's, and/or Brendle-Walker's use of the trademark "Ugly Bishop's Tattoo Shop" and the Fighting Rooster Logo to falsely represent that the Walker Shop is associated with and/or endorsed by UBTS violates the Lanham Act, 15 U.S.C. section 1125(a), by falsely associating the Walker Shop with UBTS.  *See* 15 U.S.C. § 1125(a).

144.     As a consequence of Walker's, the Walker LLC's, and/or Brendle-Walker's ongoing false designation of the Walker Shop as connected to UBTS in violation of the Lanham Act, 15 U.S.C. section 1125(a), one or both of the Shops have suffered, and continue to suffer, serious and ongoing damages as set forth in the *ad damnum* clause herein, and Mr. Prichep should be compensated, individually and/or derivatively on UBTS' behalf, as provided under 15 U.S.C. section 1117(a).

145.     Mr. Prichep therefore prays that judgment be entered in his favor against Walker, the Walker LLC, and Brendle-Walker, jointly and severally, in the amounts set forth in the *ad damnum* clause at the end of this Complaint.

FOURTH CAUSE OF ACTION:  BREACH OF FIDUCIARY DUTY
<u>(Derivative Claim against Walker)</u>

146.    Paragraphs 1-90 of this Complaint are hereby re-alleged and restated, as if set forth verbatim in this Paragraph.

147.    Under the Shops' respective Operating Agreements, Walker was manager for UBTS and for UBTP.

148.    As manager for each of the Shops, Walker was responsible for each Shop's day-to-day operation and management, including, *inter alia*, making timely deposits into each Shop's bank account from revenue generated in the course of each Shop's business.

149.    As manager for each of the Shops, Walker had a fiduciary duty to carry out his managerial duties in the utmost good faith and fidelity, to ensure the Shops were adequately staffed in accordance with DPOR rules, to deposit all revenues generated in the course of each Shop's business into each Shop's bank account, and to report all revenues on a weekly basis.

150.    Walker also was obligated as the Shops' manager to run each Shop's business in a professional and businesslike manner, and in good faith, including in his management and supervision of the independently contracted professionals employed at each Shop's location.

151.    Walker violated his duties of good faith and fidelity to the Shops, *inter alia*, by:

a.    Abandoning each Shop's business without consent from each Shop's membership, and without regard for the adverse consequences of his abandonment to each of the Shops;

b.    Leaving the Shops staffed by unsupervised apprentice tattoo artists in violation of DPOR rules;

c.   Working "off the books" in order to retain for himself funds generated by Walker's and/or the Shops' work in the course of the Shops' respective businesses, at the Shops' expense;

d.   Running each of the Shops' retail operations primarily, if not exclusively, on a cash basis, thereby rendering accurate bookkeeping of the Shops' respective revenues difficult or impossible;

e.   Dismissing independently contracted professionals employed at each Shop's location without good cause, thereby depriving each Shop of revenues generated by the dismissed professionals;

f.   Charging expenses to each Shop's bank account and/or credit-card account without regard for the Shops' revenues and ability to pay the debts Walker incurred;

g.   Failing to deposit all revenues generated in the course of each Shop's business into each Shop's bank account, thereby depriving the Shops of their ability to pay their respective debts and obligations;

h.   Luring customers and/or independent professionals from one or both of the Shops' businesses to patronize, or work for, Walker's new, competing business; and

i.   Registering a new company, the Walker LLC, to launch a competing business while he remained a member and manager of the Shops.

152.     Walker's violations of his duties of fidelity to each of the Shops have caused the Shops to suffer serious and permanent damages, including loss of revenues, loss of good will, defaults on debts, loss of business, and other damages.

153.     Mr. Prichep therefore prays that judgment be entered in his favor, derivatively on the Shops' behalf, in the amounts set forth in the *ad damnum* clause at the end of this Complaint.

FIFTH CAUSE OF ACTION:  CONVERSION
(Derivative Claim against Walker and the Walker LLC)

154.     Paragraphs 1-146 of this Complaint are hereby re-alleged and restated, as if set forth verbatim in this Paragraph.

155.     As provided under each Shop's Operating Agreement, all revenues generated in the course of each Shop's business were to be deposited into each Shop's bank account.

156.     As manager for each of the Shops, Walker was responsible for seeing that all such deposits were made and reported on a weekly basis.

157.     The revenues generated in the course of each Shop's business were funds belonging to each of the Shops, and not to Walker personally.

158.     Additionally, all property purchased with funds belonging to UBTS and/or UBTP belonged to one or the other of those Shops.

159.     Walker converted property belonging to each of the Shops to his own use and/or to the use of the Walker LLC and/or Brendle-Walker, *inter alia*, by:

    a.   Working "off the books" in order to retain for himself funds generated by Walker's and/or the Shops' work in the course of the Shops' respective businesses, funds which belonged to UBTS or UBTP;

    b.   Appropriating for his own use certain property purchased with one or the other of the Shops' funds, in order to equip his new, competing business; and

    c.   Misappropriating the name "Ugly Bishop's Tattoo Shop" and the Fighting Rooster Logo, which are property belonging to one or both of the Shops, and/or to Mr. Prichep.

160.    The Walker LLC converted property belonging to each of the Shops to its own use, *inter alia*, by misappropriating the name "Ugly Bishop's Tattoo Shop" and the Fighting Rooster Logo, which are property belonging to the Shops and/or to Mr. Prichep.

161.    Mr. Prichep therefore prays that judgment be entered in his favor against Walker and the Walker LLC, jointly and severally, derivatively on the Shops' behalf, in the amounts set forth in the *ad damnum* clause at the end of this Complaint.

SIXTH CAUSE OF ACTION:  TORTIOUS INTERFERENCE WITH CONTRACT
(Claim against Walker and the Walker LLC by Mr. Prichep)

162.    Paragraphs 1-162 of this Complaint are hereby re-alleged and restated, as if set forth verbatim in this Paragraph.

163.    As provided under UBTS' Operating Agreement, UBTS owed Mr. Prichep $1,000 per week in revenue as the company's "Passive Partner."

164.    As provided under UBTP's Operating Agreement, UBTP also owed Mr. Prichep $1,000 per week in revenue as the company's "Passive Partner."

165.    Walker has wrongfully interfered with Mr. Prichep's contractual rights vis-à-vis each of the Shops, *inter alia*, by:

    a.    Failing to deposit sufficient funds into the Shops' bank accounts for the Shops to meet their contractual obligations to Mr. Prichep under their respective Operating Agreements;

    b.    Diverting funds that should have been deposited into the Shops' bank accounts for Walker's own enrichment and benefit, thereby preventing the Shops from meeting their contractual obligations to Mr. Prichep under their respective Operating Agreements;

c.  Failing to keep accurate accounts and records of the Shops' revenues, thereby preventing Mr. Prichep from being able to adequately audit the Shops' books and records;

d.  Failing to fund each of the Shops sufficiently to meet their respective obligations, thereby causing Mr. Prichep to incur personal liability for at least some of the Shops' debts;

e.  Failing to manage the Shops in a responsible, businesslike manner for the benefit of the Shops and their members, including Mr. Prichep;

j.  Abandoning each Shop's business without consent from each Shop's membership, and without regard for the adverse consequences of his abandonment to each of the Shops;

f.  Leaving the Shops staffed by unsupervised apprentice tattoo artists in violation of DPOR rules;

g.  Misappropriating the name "Ugly Bishop's Tattoo Shop" and the Fighting Rooster Logo, which are property belonging to UBTS and/or to Mr. Prichep; and

h.  Registering a new company, the Walker LLC, to launch a business competing with the Shops.

166.    The Walker LLC has wrongfully interfered with Mr. Prichep's contractual rights vis-à-vis each of the Shops, *inter alia*, by misappropriating the name "Ugly Bishop's Tattoo Shop" and the Fighting Rooster Logo, which are property belonging to UBTS and/or to Mr. Prichep.

167.    Mr. Prichep therefore prays that judgment be entered in his favor against Walker and the Walker LLC, jointly and severally, in the amounts set forth in the *ad damnum* clause at the end of this Complaint.

- 29 -

SEVENTH CAUSE OF ACTION:  CONSPIRACY TO
TORTIOUSLY INTERFERE WITH A CONTRACT
(Claim against Walker and Brendle-Walker by Mr. Prichep)

168.     Paragraphs 1-168 of this Complaint are hereby re-alleged and restated, as if set forth verbatim in this Paragraph.

169.     As provided under UBTS' Operating Agreement, UBTS owed Mr. Prichep $1,000 per week in revenue as the company's "Passive Partner."

170.     As provided under UBTP's Operating Agreement, UBTP also owed Mr. Prichep $1,000 per week in revenue as the company's "Passive Partner."

171.     Walker and Brendle-Walker have combined, associated, agreed, mutually undertaken, and/or concerted together for the purpose of interfering with Mr. Prichep's contracts with UBTS and UBTP, respectively, *inter alia* by:

   a.  Diverting funds that should have been deposited into the Shops' bank accounts for Walker's and/or Brendle-Walker's own enrichment and benefit, thereby preventing the Shops from meeting their contractual obligations to Mr. Prichep under their respective Operating Agreements;

   b.  Setting up a competing business, the Walker Shop, using funds, property, equipment, and other assets belonging to one or both of the Shops and without permission to use such assets, thereby preventing the Shops from meeting their respective contractual obligations to Mr. Prichep; and

   c.  Misappropriating the name "Ugly Bishop's Tattoo Shop" and the Fighting Rooster Logo, which is property belonging to the Shops and/or to Mr. Prichep.

172.     Mr. Prichep therefore prays that judgment be entered in his favor against Walker and Brendle-Walker, jointly and severally, in the amounts set forth in the *ad damnum* clause at the end of this Complaint.

EIGHTH CAUSE OF ACTION:  CONSPIRACY IN VIOLATION OF
CODE OF VIRGINIA §§ 18.2-499 and 18.2-500
(Derivative Claim against Walker and Brendle-Walker)

173.     Paragraphs 1-173 of this Complaint are hereby re-alleged and restated, as if set forth verbatim in this Paragraph.

174.     By statute, Virginia law prohibits "[a]ny two or more persons . . . combin[ing], associat[ing], agree[ing], mutually undertak[ing] or concert[ing] together for the purpose of willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever. . . ."  Va. Code Ann. § 18.2-499.A.

175.     The statute further provides that "[a]ny person who attempts to procure the participation, cooperation, agreement or other assistance of any one or more persons to enter into any combination, association, agreement, mutual understanding or concert prohibited in subsection A of this section shall be guilty of a violation of this section. . . ."  Va. Code Ann. § 18.2-499.B.

176.     Also by statute, "[a]ny person who shall be injured in his reputation, trade, business, or profession by reason of a violation of [Code section] 18.2-499 may sue therefor and recover three-fold damages by him sustained, and the costs of suit, including a reasonable fee to plaintiff's counsel, and without limiting the generality of the term, 'damages' shall include loss of profits."  Va. Code Ann. § 18.2-500.A.

177.    Walker and Brendle-Walker combined, associated, agreed, mutually undertook, and/or concerted together for the purpose of willfully and maliciously injuring UBTS and/or UBTP in their reputation, trade, business, or profession, *inter alia*, by:

a.  Working "off the books" in order to retain for themselves funds generated by Walker's and/or the Shops' work in the course of the Shops' respective businesses, at the Shops' expense;

b.  Converting to their own use one or both of the Shops' funds, property, equipment, and other assets to fund and equip a new, competing business – the Walker Shop;

c.  Running each of the Shops' retail operations primarily, if not exclusively, on a cash basis, thereby rendering accurate bookkeeping of the Shops' respective revenues difficult or impossible;

d.  Charging expenses to each Shop's bank account and/or credit-card account for the primary benefit of Walker, Brendle-Walker, and/or the Walker Shop, and without regard for the Shops' revenues and ability to pay the debts Walker and/or Brendle-Walker caused the Shops to incur;

e.  Removing UBTS' and/or UBTP's business property from each Shop's business premises and converting that property to Walker's and/or Brendle-Walker's use at the Walker Shop;

f.  Setting up a competing business, the Walker Shop, operating under UBTS' trademark "Ugly Bishop's Tattoo Shop";

g.  Luring or inviting customers and/or independent professionals from one or both of the Shops' businesses to patronize, or work for, Walker's new, competing business at the Walker Shop; and

h. Infringing on the "Ugly Bishop's Tattoo Shop" mark and the Fighting Rooster Logo intentionally and willfully to confuse, mislead, and/or deceive consumers into believing that the Walker Shop was a mere relocation of UBTS' business, and thus to deprive UBTS of such customers' business.

178.    Walker's and Brendle-Walker's combination, association, agreement, mutual undertaking, and/or concert together for the purpose of willfully and maliciously injuring each of the Shops in its reputation, trade, business, or profession, have caused the Shops to suffer serious and permanent damages, including loss of revenues, defaults on debts, loss of business, and other damages.

179.    Based on Walker's conspiracy with Brendle-Walker to harm the Shops' business, Walker is liable to Mr. Prichep in the amounts alleged in the *ad damnum* clause at the end of this Complaint

NINTH CAUSE OF ACTION – EQUITABLE ACCOUNTING
(Derivative Claim against Walker)

180.    Paragraphs 1-180 of this Complaint are hereby re-alleged and restated, as if set forth verbatim in this Paragraph.

181.    By statute, an "accounting in equity may be had against any fiduciary or by one joint tenant, tenant in common, or coparcener for receiving more than comes to his just share or proportion, or against the personal representative of any such party."  Va. Code Ann. § 8.01-31.

182.    Virginia's common law also provides a principal with the right to an accounting in equity against the principal's fiduciary.

183.    As manager for UBTS and for UBTP, Walker stands in a fiduciary relationship to each of those companies.

184.    In his fiduciary role, Walker has received more than his just share or proportion, *inter alia*, by:

    a.  Working "off the books" in order to retain for himself funds generated by Walker's and/or the Shops' work in the course of the Shops' respective businesses, funds which belonged to UBTS or UBTP;

    b.  Appropriating for his own use certain property purchased with one or the other of the Shops' funds, in order to equip his new, competing business; and

    c.  Misappropriating the name "Ugly Bishop's Tattoo Shop," which is property belonging to UBTS and/or to Mr. Prichep.

185.    For these reasons, Walker should be ordered to render an accounting in equity for his management of the Shops' funds, resources, and assets.

## *AD DAMNUM*

WHEREFORE, Mr. Prichep respectfully prays that the Court enter an Order, ADJUDGING, ORDERING, and DECREEING that:

(1) Mr. Prichep be awarded compensatory damages as provided under Title 15, section 1117(a) of the United States Code, consisting of (i) the Walker Shop's profits, to date, and (ii) monetary damages, in the amount of at least EIGHTY-ONE THOUSAND THIRTY-FOUR AND NO/100 DOLLARS ($81,034.00);

(2) Mr. Prichep be awarded his costs for this action, as provided under Title 15, section 1117(a) of the United States Code;

(3) Mr. Prichep be awarded compensatory damages in the amount of at least ONE HUNDRED FIFTEEN THOUSAND EIGHT HUNDRED AND NO/100 DOLLARS ($115,800), plus an additional TWO THOUSAND AND NO/100 DOLLARS ($2,000)

for each week from the filing of this Complaint, against Walker and/or the Walker LLC, based on their tortious interference with Mr. Prichep's contractual right to receive weekly revenues from the Shops as provided in the Shops' respective Operating Agreements;

(4) Mr. Prichep be awarded compensatory damages in the amount of at least ONE HUNDRED FIFTEEN THOUSAND EIGHT HUNDRED AND NO/100 DOLLARS ($115,800), plus an additional TWO THOUSAND AND NO/100 DOLLARS ($2,000) for each week from the filing of this Complaint, against Walker and Brendle-Walker, jointly and severally, based on their conspiracy to tortiously interfere with Mr. Prichep's contractual right to receive weekly revenues from the Shops as provided in the Shops' respective Operating Agreements;

(5) Mr. Prichep be awarded compensatory damages in the amount of at least NINE THOUSAND TWO HUNDRED FIFTY-FOUR AND 90/100 DOLLARS ($9,254.90) against Walker, in compensation for the Shops' credit-card debt he has guaranteed and for which he now stands liable;

(6) Mr. Prichep be awarded compensatory damages, in the amount of at least EIGHTY-ONE THOUSAND THIRTY-FOUR AND NO/100 DOLLARS ($81,034.00) against Walker, for the damages the Shops have suffered as a result of Walker's breaches of his fiduciary duties to the Shops;

(7) Mr. Prichep be awarded compensatory damages, in the amount of at least EIGHTY-ONE THOUSAND THIRTY-FOUR AND NO/100 DOLLARS ($81,034.00) against Walker and the Walker LLC, jointly and severally, for the funds, property, and other

assets belonging to each of the Shops which Walker and/or the Walker LLC have converted to their own use;

(8) Mr. Prichep be awarded treble damages against Walker and against Brendle-Walker, jointly and severally, as provided under Code of Virginia section 8.01-500, in the amount of at least TWO HUNDRED FORTY-THREE ONE HUNDRED TWO THOUSAND AND NO/100 DOLLARS ($243,102.00), based on Walker's and Brendle-Walker's conspiracy to harm the Shops in their business;

(9) Walker shall render account in equity for the Shops' respective funds, property, and other assets entrusted to his care;

(10) Mr. Prichep be awarded his attorneys' fees and costs incurred in bringing this action, as provided under Code of Virginia section 8.01-500 and/or under Code of Virginia section 8.01-31;

(11) Walker be ordered to pay punitive damages to Mr. Prichep in the amount of THREE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($350,000.00) based on his breaches of fiduciary duty, acts of conversion, tortious interference with Mr. Prichep's contractual rights, and acts of conspiracy with Brendle-Walker to harm the Shops' business, and to tortiously interfere with Mr. Prichep's contractual rights;

(12) Brendle-Walker be ordered to pay damages to Mr. Prichep in the amount of THREE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($350,000.00) based on her acts of conspiracy with Walker to harm the Shops' business, and to tortiously interfere with Mr. Prichep's contractual rights;

(13) The Walker LLC be ordered to pay damages to Mr. Prichep in the amount of THREE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($350,000.00) based on its acts of conversion and tortious interference with Mr. Prichep's contractual rights;

(14)  Walker, Brendle-Walker, and the Walker LLC be permanently enjoined from trading under the names "Ugly Bishop's Tattoo Shop," "Ugly Bishop's Tattoo Parlor," "UB Ink," and any other name misleadingly similar to or falsely signifying association with "Ugly Bishop Tattoo";

(15)  Walker, Brendle-Walker, and the Walker LLC be permanently enjoined from use of the Fighting Rooster Logo; and

(16)  Walker, Brendle-Walker, and the Walker LLC be required to post a disclaimer on stating that the Walker Shop is not affiliated with UBTS and/or UBTP;

(17)  Walker be dissociated as a member of both of the Shops, pursuant to Code of Virginia section 13.1-1040.1(5);

(18)  Mr. Prichep be awarded pre-judgment and post-judgment interest; and

(19)  Mr. Prichep is awarded all such other and further relief as the Court deems appropriate and just.

<u>RESERVATION OF RIGHT TO SEEK LEAVE TO AMEND</u>

The Plaintiffs reserve the right to request leave to amend this Complaint during or following discovery in this action, in order to conform the Complaint's allegations and causes of action to the facts learned in discovery.

**A JURY TRIAL IS DEMANDED**.

Respectfully submitted,

RONALD H. PRICHEP, individually,

and

RONALD H. PRICHEP, derivatively, as a Member of Ugly Bishop Tattoo Shop, LLC, and of Ugly Bishop Tattoo Parlor, LLC

By: DUNLAP BENNETT & LUDWIG PLLC


_____/s/ Kevin T. Streit_____
Of Counsel


Kevin T. Streit  (VSB No. 45024)
DUNLAP BENNETT & LUDWIG PLLC
8003 Franklin Farms Drive, Suite 220
Richmond, Virginia 23229
(804) 823-7776
(804) 977-2680 (facsimile)
kstreit@dbllawyers.com
*Counsel for Plaintiffs*